**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**JOHN AND KIM MCCLUNG**                                                              **PETITIONERS**

**v.**                                        **Case No. 1:13-cv-00044-KGB**

**COLONEL COURTNEY W. PAUL, in his official**
**capacity as District Engineer, Little Rock District,**
**U.S. ARMY CORPS OF ENGINEERS;**
**and the U.S. DEPARTMENT OF THE ARMY**                                  **RESPONDENTS**

**OPINION AND ORDER**

Petitioners John and Kim McClung bring this action seeking judicial review pursuant to the Administrative Procedures Act ("APA"), 7 U.S.C. §§ 701-706. The McClungs challenge respondents' decision to revoke a consolidated shoreline use permit and license to maintain a private boat dock and stone and mortar steps at Greers Ferry Lake in Arkansas. The McClungs originally brought this action against respondents Colonel Glen A. Masset, in his official capacity as District Engineer of the U.S. Army Corps of Engineers Little Rock District, and the U.S. Department of the Army. The Court takes judicial notice that Colonel Courtney W. Paul assumed duties as the District Engineer and Commander of the Corps's Little Rock District on July 2, 2013. Col. Paul is automatically substituted for Col. Masset pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

This case is currently before the Court on the parties' briefing submitted in accordance with the Court's briefing schedule (Dkt. Nos. 36, 39). Also before the Court are the McClungs' limited objection to the administrative record and request for supplementation of the record (Dkt. No. 32) and respondents' motion to strike the McClungs' extra-record exhibits (Dkt. No. 37). For the following reasons, the Court denies the McClungs' request to supplement the record

(Dkt. No. 32), grants respondents' motion to strike (Dkt. No. 37), and denies the McClungs' petition for review.

## I.  Factual Background

The United States Army Corps of Engineers exercises control over Greers Ferry Lake and other water resource development projects pursuant to section 4 of the 1944 Flood Control Act, codified as amended at 16 U.S.C. § 460d.  The Corps is tasked with maintaining the water areas and shorelines of water resource development projects for public use and recreation "when such use is determined by the Secretary of the Army not to be contrary to the public interest, all under such rules and regulations as the Secretary of the Army may deem necessary . . . ."  16 U.S.C. § 460d.  The rules and regulations applicable to water resource development projects administered by the Corps are provided in 36 C.F.R. pt. 327.  *See* 36 C.F.R. § 327.0.  Section 327.30 specifically addresses shoreline management and provides in part that it is the Corps's policy to protect and manage shorelines of civil works water resource development projects "in a manner which will promote the safe and healthful use of these shorelines by the public while maintaining environmental safeguards to ensure a quality resource for use by the public."  36 C.F.R. § 327.30(d)(1).  Further, "[t]he objectives of all management actions will be to achieve a balance between permitted private uses and resource protection for general public use."  *Id.*

The Corps's policies for shoreline management are implemented through the preparation of a Shoreline Management Plan ("SMP") that the Corps is required to prepare for each project where private shoreline use is allowed.  *Id.*, § 327.30(d)(3), (e)(1).  Private shoreline uses "may be authorized" consistent with approved use allocations specified in the SMPs.  *Id.*, § 327.30(d)(2).  Shoreline use permits are required for private structures and activities on project waters and for vegetation modification.  *Id.*, § 327.30(f)(1)(ii), (iv).

Appendices A and C to 36 C.F.R. § 327.30 provide the guidelines for granting shoreline use permits and the shoreline use permit conditions.  The district commander may revoke shoreline use permits "when it is determined that the public interest requires such revocation or when the permittee fails to comply with terms and conditions of the permit, the Shoreline Management Plan, or of this regulation."  36 C.F.R. § 327.30, app. A, para 3; *see also* 36 C.F.R. § 327.19(e).  Sections 6-07 and 6-13 of the current Greers Ferry SMP reiterate the district commander / district engineer's authority to revoke shoreline use permits when in the public interest or when the permittee fails to comply with the terms and conditions of the permit, the SMP, or the Corps's regulations (AR 117-18).[1]

The McClungs own real property adjacent to government property along Greers Ferry Lake.  The McClungs purchased their property in late 2010.  The previous owners of the property had obtained permits for a private boat dock and a set of stone and mortar steps across the government property, leading to the boat dock (AR 1, 26).  Following an inspection of the McClungs' boat dock, the Corps informed Mr. McClung by letter dated August 8, 2011, that the letter permit issued to the previous owner to maintain the steps on public property became null and void upon the sale of the property to the McClungs (AR 1).  *See* 36 C.F.R. § 327.30(g) (shoreline use permits are non-transferrable and become null and void upon sale or transfer of the permitted facility).  The Corps informed Mr. McClung that he would need to combine the steps with the permit for the private boat dock and would be charged a reoccurring fee for the use of the right-of-way for the term of the real estate license for the steps (AR 1).  The letter asked that Mr. McClung make arrangements to remove the steps from public property if he did not wish to obtain a license for the steps.  In September 2011, the McClungs applied for a combined

---

[1] The administrative record, *see* Dkt. No. 22, was filed in conventional format and will be cited herein as "AR."

shore line use permit and license for their boat dock and steps (AR 23).  Ranger Gary Ivy met with the McClungs on September 21, 2011, to discuss permitting procedures and regulations of the shoreline program and to obtain a signature for a dock consultation form that must be signed prior to obtaining shoreline use permits (AR 18, 89).

On January 4, 2012, the Corps issued to the McClungs a consolidated shoreline use permit and real estate license for a single-owner dock and stone and mortar steps (AR 15-26, 89). The permit provides that the permittee agrees to comply with the applicable provisions of 36 C.F.R. pt. 327 and the Greers Ferry SMP.  The shoreline use permit conditions found at appendix C of 36 C.F.R. § 327.30 are listed on the back of the permit (AR 17).   Condition number 18 provides:  "No vegetation other than that prescribed in the permit will be damaged, destroyed or removed.  No vegetation of any kind will be planted, other than that specifically prescribed in the permit."  36 C.F.R.  § 327.30, app. C.  Section 8-02(a) of the SMP provides that permits may allow for a maximum limit of "underbrushing" up to 100 feet from a habitable structure, although section 8-02(c) prohibits the use of chemicals for vegetation modified by the public (AR 119-20).  The McClungs' permit authorized mowing consistent with the SMP and included a map of the McClungs' property designating the mowing boundary (AR 16, 19).

On June 4, 2012, Ranger Ivy investigated a vegetation kill, or "herbicide trespass," on the public property adjacent to the McClungs' property and found an area of 8,400 square feet of public land that had been sprayed with herbicide (AR 29, 34).  The record indicates that Mr. McClung relayed to Ranger Ivy on June 4, 2012, that he had been in Texas at the time but had hired people to spray his property while he was away (AR 34).  The McClungs do not dispute that they caused the public property to be sprayed with herbicide.

On August 7, 2012, Col. Masset sent a letter to the McClungs informing them that they were in violation of 36 C.F.R. § 327.14(a), which prohibits the destruction, injury, defacement, removal, or alteration of any vegetative growth on public property, except when in accordance with the written permission of the district commander, and section 8-02(c) of the SMP, which prohibits the use of chemicals for vegetation modification by the public (AR 37-38).   Col. Masset determined to implement the following actions:  (1) restricting the McClungs' boat dock from any use for a two-year period; (2) terminating the McClungs' real estate license for the stone and mortar steps and requiring removal of the steps within 30 days; (3) requiring the McClungs to cease immediately all mowing on public property; and (4) designating the area between the McClungs' property and the lake as a restoration area.  The August 7, 2012, decision letter states that any use of the boat dock facility or any other shoreline violation during the two-year time frame would be grounds for immediate and permanent removal of the boat dock and termination of all shoreline permits.

The McClungs subsequently retained counsel, and Col. Masset agreed on August 29, 2012, to grant a 30-day stay regarding the removal of the stone steps to give the McClungs and their counsel time to initiate an appeal.  The McClungs obtained additional extensions and, through counsel, submitted a letter appeal on November 5, 2012 (AR 44).  In their appeal, the McClungs argued for a fine rather than permit revocation, stating that the herbicide spray was unintentional and that they were willing to take necessary action to restore and remediate the area.  The McClungs requested a hearing pursuant to condition 21 of the shoreline use permit conditions, and the parties agreed to postpone the hearing until after the holidays.

On January 16, 2013, while the McClungs' appeal was pending, Ranger Ivy discovered that the McClungs had gone on to the public property on the shoreline and cut down the

vegetation that had been sprayed with herbicide (AR 52-53).  The parties again postponed the hearing in order to address both violations.  On March 1, 2013, the Corps sent to Mr. McClung a letter informing him that the new penalty, considering both violations, would be the complete revocation of the permit (AR 83).

Col. Masset held a hearing on March 28, 2013.  In a final ruling issued after the hearing, Col. Masset states that Mr. McClung took responsibility for both violations and expressed remorse, explaining "that the second violation was a misguided attempt to rectify the situation by removing vegetation in order to replant the area" (AR 90).  The McClungs apparently submitted at the hearing a proposed remediation plan and a nursery receipt for the tress and grasses that they intended to plant in the affected area (AR 84-87).  In their petition for review, the McClungs confirm that they stated at the hearing that they removed brush in order to replant the affected area, although they claim this did not violate a permit condition or the SMP because no "mowing" was involved (Dkt. No. 1, ¶ 7).

Col. Masset issued a final ruling on April 13, 2013, revoking the McClungs' permit in its entirety (AR 90-91).  Col. Masset's final ruling states that Mr. McClung's remorse does not excuse his behavior "and complete disregard for public property" (AR 91).  The final ruling reiterates that Mr. McClung's actions violated 36 C.F.R. § 327.14(a) and the SMP and notes that Ranger Ivy made Mr. McClung aware of these requirements and provided the McClungs a copy of the regulations when the permit was issued.  Col. Masset further notes in the final ruling that his letter of August 7, 2012, expressly stated that the McClungs were to cease mowing on public property.  Col. Masset's final order further states:

> This [August 7, 2012] letter was the Corps'[s] attempt to lessen the penalties imposed as a result of the vegetation kill, impress upon McClung the seriousness of his actions and allow him another opportunity to comply with the regulations. Instead of modifying his behavior, however, McClung blatantly disregarded the

letter by proceeding to mow property that did not belong to him, despite its owner's direct prohibition against such action.  Moreover, McClung failed several times to contact the Corps:  (1) to report the mistake when the vegetation kill initially occurred, (2) to discuss the possibility of replanting prior to the second violation, or (3) to report the second mowing violation.  Such behavior is not demonstrative of either remorse or understanding, but rather an inability to acknowledge the fundamental integrity of government property.  Therefore, the Corps sees no reason to mitigate the severity of this penalty.

(AR 91).

Col. Masset's final order of April 11, 2013, provided the McClungs 30 days to remove the private dock and steps from Greers Ferry Lake Project lands and waters.  The parties subsequently agreed to stay implementation of the order pending judicial review (Dkt. No. 12).

## II.    Standard Of Review

The scope of judicial review under the APA is limited; the Court will uphold the agency decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *Voyageurs Nat. Park Ass'n v. Norton*, 381 F.3d 759, 763 (8th Cir. 2004).  The standard of review requires that the court give agency decisions a high degree of deference.  *Voyageurs*, 381 F.3d at 763.

Under the arbitrary and capricious standard, the reviewing court considers "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  *Citizens to Pres. Overton Park, Inc. v. Volpe* ("*Overton Park*"), 401 U.S. 402, 416 (1971).  The reviewing court "is not empowered to substitute its judgment for that of the agency."  *Id.*  "If an agency's determination is supportable on any rational basis, the court must uphold it."  *Voyageurs*, 381 F.3d at 763.  "This is especially true when an agency is acting within its own sphere of expertise."  *Id.* (citing *Friends of the Boundary Waters Wilderness v. Dombeck*, 164 F.3d 1115, 1128 (8th Cir. 1999) ("[w]hen the resolution of the dispute involves primarily issues of fact and analysis of the relevant information requires a high level of technical

expertise, we must defer to the informed discretion of the responsible federal agencies.")). While the reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given," the court "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). An agency's decision is entitled to "a presumption of regularity." *Overton Park*, 401 U.S. at 415. The burden is on the McClungs to prove that the agency's action was arbitrary and capricious. *South Dakota v. U.S. Dep't of Interior*, 423 F.3d 790, 799-800 (8th Cir. 2005).

The Court must review administrative sanctions "according to the fundamental principle that where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy the relation of remedy to policy is peculiarly a matter for administrative competence." *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185 (1973) (quoting *Am. Power & Light Co. v. SEC,* 329 U.S. 90, 112 (1946)) (internal quotations and alterations omitted). "The fashioning of an appropriate and reasonable remedy is for the [agency], not the court. The court may decide only whether under the pertinent statute and relevant facts, the [agency] made an 'allowable judgment in [its] choice of the remedy.'" *Id.* at 188-89 (quoting *Jacob Siegel Co. v. FTC*, 327 U.S. 608, 612 (1946)); *see Oiciyapi Fed. Credit Union v. Nat'l Credit Union Admin.*, 936 F.2d 1007, 1012 (8th Cir. 1991) (quoting same). Thus, the administrative choice of sanction may not be overturned unless the Court finds it "'unwarranted in law or without justification in fact . . . .'" *Butz*, 411 U.S. at 185-86 (quoting *Am. Power & Light*, 329 U.S. at 112-13); *see also Syverson v. U.S. Dep't of Agric.*, 666 F.3d

1137, 1140 (8th Cir. 2012) (discussing same standard); *Lowry v. S.E.C.*, 340 F.3d 501, 504 (8th Cir. 2003) (same).

As a general rule, courts presume that Congress intended agency action to be subject to judicial review under the APA. *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1027 (8th Cir. 2003). However, the APA precludes judicial review where the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This narrow exception applies "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Overton Park*, 401 U.S. at 410 (internal quotation marks omitted). In other words, "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Courts have found that "law to apply" may exist in the underlying statute or in the agency regulations interpreting the underlying statute. *Kenney v. Glickman*, 96 F.3d 1118, 1124 (8th Cir. 1996).

The test under § 701(a)(2) is not whether a statute viewed in the abstract lacks applicable law but instead is whether there is no law to be applied in a given case. *Strickland v. Morton*, 519 F.2d 467, 470 (9th Cir. 1975); *Gardner v. U.S. Army Corps of Engineers*, 504 F. Supp. 2d 396, 399 & n.23 (E.D. Ark. 2007) (citing same). "Thus, the existence of some law that is generally applicable to the subject matter will not necessarily remove agency discretion. There is law to apply, only if a specific statute or regulation limits the agency's discretion to act in the specific manner which is challenged." *Gardner*, 504 F. Supp. 2d at 399.

In the context of dam releases on the Missouri River, the Eighth Circuit in *Ubbelohde*, 330 F.3d 1014, rejected the argument that there is no law to apply under 16 U.S.C. § 460d. The court explained that, although § 460d provides the Corps a "great deal of discretion," the statute

9

provides some law to apply insofar as it requires the Corps to consider and balance flood control, navigation, recreation, and other interests. *Id.* at 1027. However, the court stressed that the statute does not provide "a method of deciding whether the balance actually struck by the Corps in a given case is correct or not." *Id*. The court further found law to apply in the Corps's master manual for management of the Missouri River, which the court found to be a binding internal regulation. *Id.* at 1027-29.

Two courts in this district have reached the opposite conclusion, determining that there was no law to apply and therefore no jurisdiction, when considering the refusal to grant or waive shoreline use permits issued under 36 C.F.R. § 327.30. In *Gardner*, 504 F. Supp. 2d 396, the court determined it did not have jurisdiction under the APA to review a challenge to the Corps's refusal to issue a shoreline use permit to one individual for a private boat dock on Greers Ferry Lake. The court emphasized that a refusal to issue a permit to one individual is not an affirmative action but instead is a refusal to act, which typically is the kind of decision that has been deemed absolutely discretionary when it affects one individual and not a class. *Id.* at 401; *see Heckler*, 470 U.S. at 832. The court analyzed the regulation that appeared to apply, 36 C.F.R. § 327.30, but determined that, under the facts presented in *Gardner*, that regulation did not compel the Corps to issue a permit once the requirements had been met but instead granted the Corps discretion in authorizing shoreline use by private parties. *Gardner*, 504 F. Supp. 2d at 402. The court explained that the Corps is not required to give every private citizen a dock permit but is charged with managing the shore to prevent floods, safety hazards, and environmental damage. Because the refusal to issue a permit for a boat dock in that case did not include issues of public access, public safety, flood control, or environmental management, the

court found that were no guidelines to apply and, therefore, determined it lacked jurisdiction. *Id.* at 402.

In *Illig v. United States Army Corps of Engineers*, No. 4:09CV00143 JLH, 2009 WL 1544271 (E.D. Ark. June 3, 2009), the plaintiff filed suit against the Corps seeking to prevent the Corps from removing or altering a dock that he had built adjacent to his property on Beaver Lake. The Corps argued that the Court lacked jurisdiction to review plaintiff's claim, and the court agreed. In 2005, the Corps had approved plaintiff's plans for a private boat dock to be built adjacent to his property. Sometime after receiving that approval, plaintiff built a dock. According to the Corps, the plans for the dock plaintiff built were not in compliance with the standards of the Beaver Lake SMP. The Corps informed plaintiff that he would have to make modifications to the dock to bring it into compliance or the Corps would remove his dock. Plaintiff filed suit to prevent the Corps from removing his dock, claiming that the Corps's decision was arbitrary and capricious, beyond statutory authority, an abuse of discretion, and not in compliance with the law. The court found that plaintiff essentially sought a waiver from the plans the Corps previously approved in 2005 because the structure plaintiff built included modifications from the 2005 plans. *Id.* at *3. Following the reasoning in *Gardner*, the *Illig* court determined that it lacked jurisdiction to review the Corps's decision. *Id.* at *4. The court explained that, because a refusal to issue a permit or waiver is not an affirmative action, and because the refusal at issue affected only one party rather than an entire class, the Corps's decision to deny the permit or waiver was an action committed to the agency's discretion by law. *Id.* at *3. The Court also determined that there were no legal standards to apply to the case. *Id.*

Respondents have not challenged jurisdiction in this case or otherwise discussed whether the decision at issue is committed to agency discretion by law. Considering the issue *sua sponte*,

the Court believes this case is distinguishable from *Gardner* and *Illig* in so far as it does not involve the refusal to grant a permit or waiver but instead involves the affirmative revocation of a permit that the parties characterize as a sanction.  Further, the McClungs argue that the Corps failed to follow its own regulations and federal statutes when making this decision and that this decision raises environmental concerns.  Based on these factors, the Court determines it has jurisdiction in this case but that its jurisdiction is limited, as the Corps has broad discretion in deciding to revoke shoreline use permits.  In such circumstances, the Court has jurisdiction to review whether respondents' decision violates a constitutional, statutory, regulatory, or other legal mandate or restriction, but the Court lacks jurisdiction to review an alleged abuse of discretion regarding "the making of an informed judgment by the agency."  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1082 (9th Cir.), *cert. denied*, 134 S. Ct. 2877 (2014).

## III.     Scope Of The Record

The Court first considers the scope of the record in this case.  The McClungs argue that the record is inadequate for them to brief and argue their case because of the lack of a certified transcript of the March 28, 2013, hearing, a claimed lack of evidence of the second violation, and a lack of evidence of sanctions imposed on other violators of the SMP.  In addition, the McClungs have submitted extra-record exhibits with their substantive briefing.  Respondents oppose the McClungs' request to supplement the record and have moved to strike the McClungs' extra-record exhibits.

 "It is well-established that judicial review under the APA is limited to the administrative record that was before the agency when it made its decision."  *Voyageurs*, 381 F.3d at 766.  "By confining judicial review to the administrative record, the APA precludes the reviewing court from conducting a *de novo* trial and substituting its opinion for that of the agency."  *Id.*  "When .

. . there is a contemporaneous administrative record and no need for additional explanation of the agency decision, 'there must be a strong showing of bad faith or improper behavior' before the reviewing court may permit discovery and evidentiary supplementation of the administrative record." *Newton Cnty. Wildlife Ass'n v. Rogers*, 141 F.3d 803, 807 (8th Cir. 1998) (quoting *Overton Park*, 401 U.S. at 420).  A plaintiff is not entitled to "bolster" the record as a means of attacking the final administrative decision. *Newton*, 948 F. Supp. 50, 52 (E.D. Ark. 1996).

The McClungs argue that the administrative record is somehow deficient because there is no record or transcript of the March 28, 2013, hearing incorporating Col. Masset's alleged comments showing his purported bias against the McClungs or evidence supporting revocation. The McClungs suggest that, without a certified transcript, the basis of the administrative action in this case cannot be ascertained for purposes of judicial review.  The Court disagrees.  Here, the contemporaneous administrative record provides more than a sufficient explanation for respondents' decision.  The record is sufficient for judicial review so long as the Court can discern and assess whether a rational basis exists for the agency's decision. *Rochling*, 725 F.3d at 936; *see Madison Cnty. Bldg. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 622 F.2d 393, 396, 397 (8th Cir. 1980) (finding that a resolution that "merely states that the regulatory criteria were met" satisfied this requirement).  The 182-page record here does much more, as it provides Col. Masset's decision letters stating the basis for his decision, internal documents regarding the recommendation for revocation made to Col. Masset, documentation of the violations, and other documents that provide background and context for the decision.

As to the McClungs' claim that the record lacks Col. Masset's alleged comments showing bias, "[i]nquiry into the mental processes of administrative decisionmakers is to be avoided unless it is 'the only way there can be effective judicial review.'" *Voyageurs*, 381 F.3d

at 766 (quoting *Overton Park*, 401 U.S. at 420). A record of these alleged statements is not necessary for effective judicial review. Further, the alleged comments do not demonstrate bad faith or improper behavior justifying supplementing the record. The McClungs do not elaborate on the alleged comments in their briefing at this stage but allege in their petition for review that Col. Masset stated at the hearing that he "was seen as too lenient on other violations" and prior violators "got away with improving the value of their land for insignificant monetary punishment." (Dkt. No. 1, ¶ 8). It is not clear how, if these statements were made, they demonstrate purported personal bias against the McClungs. Regardless, these allegations fall short of a strong showing of bad faith or improper behavior.

The McClungs' remaining arguments for supplementing the record—a purported lack of evidence of the second violation and a lack of sufficient comparative sanction evidence for the McClungs to argue disparate sanctions—are related to arguments the McClungs make in their substantive brief. Neither is a ground for supplementing the record. As discussed in more detail below, the record contains sufficient documentation regarding both violations, and the Court finds no merit to the McClungs' challenges based on alleged disparate sanctions.

Turning to respondents' motion to strike, only two of the McClungs' extra-record exhibits, declarations from other landowners regarding sanctions imposed against them for timber-cutting violations of the Greers Ferry SMP, are related to the grounds the McClungs cite in support of their request to supplement the record. The other exhibits include a declaration and statements of Don Porter and Richard Ackley, civil engineers, and the declaration of Pat McNair, a licensed appraiser. These are individuals the McClungs retained to give opinions in this matter in an effort to support arguments the McClungs raise in their briefing to attack respondents' decision. Their opinions, and the exhibits that contain them, are unrelated to the grounds upon

14

which the McClungs request to supplement the record.  With the exception of one of Mr. Porter's letters already in the administrative record (AR 49), none of these extra-record exhibits were before the administrative agency.  The McClungs have not established grounds for going outside of the administrative record, and they are not entitled to bolster the record now as a means of attacking respondents' decision.  The Court denies the McClungs' request to supplement the administrative record (Dkt. No. 32) and grants respondents' motion to strike (Dkt. No. 37).  The Court will not consider the McClungs' extra-record evidence, except to the extent that one of Mr. Porter's letters is included within the administrative record (AR 49).

## IV.    Analysis Of The Merits

The McClungs argue that respondents' decision is arbitrary and capricious on the following grounds:  (a) the order violates conservation and preservation mandates in the Greers Ferry SMP; (b) respondents impermissibly or improperly considered deterrence; and (c) the sanctions imposed against the McClungs are unreasonably harsh in comparison to sanctions imposed against other landowners who violated the SMP.  In addition, the McClungs purport to raise constitutional challenges to the Corps's decision, claiming due process and equal protection violations.  The Court also may review these issues under the APA.  5 U.S.C. § 706(2)(B).  The McClungs do not develop these arguments in their briefing, although they clarify in their response to respondents' motion to strike that their due process claim is based on an alleged denial of procedural due process as a result of claimed procedural deficiencies in, and a lack of evidence for, the Corps's revocation decision.  As the Court understands it, the McClungs' equal protection claim is based on the alleged disparate sanctions.

### A.   Shoreline Conservation And Preservation

The McClungs argue that respondents' order to remove the stone and mortar steps violates "the SMP's express mandate of preservation of the condition of the shoreline and preservation of existing ecological systems contained therein" (Dkt. No. 36, at 5).   The McClungs refer to the last sentence of 1-02 of the SMP, which states that the SMP "also considers means of restoration of the shoreline where degradation has occurred because of private exclusive use or misuse."  (AR 108).   Based on this language, the McClungs argue that the order to remove the steps cannot be enforced due to the lack of an Environmental Impact Study ("EIS") or other research or analysis on the potential effects of the step destruction.

The Court sees nothing in this language that requires an EIS or other formal study for the revocation of the shoreline use permit for the stone steps.  Section 1-02 of the SMP refers to the overall purpose of the SMP, not to specific procedural requirements for revoking a shoreline use permit.   To the extent section 1-02 could be read as a source of a specific, required policy consideration, the record demonstrates that respondents sufficiently considered this factor in determining to designate the area as a restoration area for 10 years to allow the area to restore to its original condition (AR 35, 38).  The operations manager specifically found that this course of action presented no disadvantages to the Greers Ferry Lake Project because it would allow restoration of the affected area (AR 35).

The McClungs disagree with the Corps's judgment on this issue, claiming that removal of the steps will cause the risk of erosion of the shoreline at the affected area.  However, their claims regarding the alleged potential effects are based on the opinions of private engineers whom the McClungs retained to provide opinions in this case, and many of these opinions are contained in extra-record evidence that the Court will not consider.  The only evidence in the

record to support the McClungs' position on this issue is Mr. Porter's November 1, 2012, letter, which primarily cites erosion concerns, opines that removing the steps would disturb the bank's aesthetics, and describes the steps as a "historical structure" (AR 50). More importantly, management of the shoreline, including restoration following degradation, is within the Corps's sphere of expertise, and this Court defers to the Corps's informed discretion on the matter. *Voyageurs*, 381 F.3d at 763; *Friends of the Boundary Waters*, 164 F.3d at 1128.

In their response to respondents' motion to strike, the McClungs attempt to argue that an EIS is required under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq*. The NEPA requires the preparation of an EIS for "proposals for legislation and other major Federal actions significantly affecting the quality of the human environment . . . ." 42 U.S.C. § 4332(C); *Sierra Club v. U.S. Forest Service*, 46 F.3d 835, 837 (8th Cir. 1995). *See also* 40 C.F.R. §§ 1508.18, 1508.27 (providing regulatory guidance on NEPA terminology of "major federal action" and "significantly"). The McClungs bear the burden of establishing a substantial environmental impact triggering NEPA that the Corps overlooked. *Winnebago Tribe v. Ray*, 621 F.2d 269, 271 (8th Cir. 1980).

The Court agrees with respondents on this point. The McClungs have not established that the decision to revoke the McClungs' permit and license, resulting in the requirement that the McClungs remove the unauthorized steps, constitutes major federal action significantly affecting the quality of the human environment triggering NEPA. Here, the McClungs argue that heavy equipment will be needed to remove the steps and that some erosion may occur after removal. This Court determines that these "relatively minor harms do not by themselves 'significantly affect[]' the environment in such a way as to implicate NEPA." *Drakes Bay Oyster Co.*, 747 F.3d at 1090.

17

The McClungs argue otherwise based on *Save Greers Ferry Lake, Inc. v. Department of Defense*, 255 F.3d 498, 501 (8th Cir. 2001), in which the Eighth Circuit Court of Appeals indicated, for limited purposes on appeal, its agreement with the district court's ruling that the Corps adopted the 2000 Greers Ferry SMP in violation of NEPA in the absence of a supporting EIS. That case is not on point. When analyzing NEPA's application, the McClungs ignore the obvious differences between an SMP governing all private use of a project's shoreline areas and a decision to revoke a single consolidated shoreline permit and license for one individual under the terms of that SMP.

The McClungs have not demonstrated that NEPA's requirement for an EIS is triggered in this case, and the SMP does not independently require an EIS or other formal study to support the decision to revoke the McClungs' permit and require the removal of unauthorized structures. To the extent the SMP requires consideration of means of restoration following degradation, the record demonstrates that the Corps considered the appropriate factors, and the Court defers to the Corps's informed discretion on shoreline management.

**B.    Deterrence Considerations**

The McClungs argue that the Corps impermissibly considered deterrence when considering the sanctions to be imposed in this case. The McClungs point to the recommended decision regarding the first violation in support of this argument. That memorandum states that revocation would reinforce the importance of complying with permit conditions and allow the area to recover. The memorandum also states that the alternative courses of action involving citations and fines for either $75.00 or $250.00 would establish "precedence [sic] that it is 'ok' to violate the terms of the conditions of permits" and that citations may lead to additional violations by neighbors since the McClungs "now have a better view/access to the lake" and other

18

neighbors may decide that a citation "is well worth the price of a citation to get a view/access that is 'priceless'" (AR 36).  Although Col. Masset did not cite deterrence in either of his decisions issued to the McClungs, he indicated his concurrence with the project office's recommendation by initialing the recommended decision summary sheet regarding the first violation (AR 34).

Based on the recommended decision memorandum, the McClungs argue that respondents relied on speculation, conjecture, and "imagined factors" as to what will deter future violations. The Court cannot agree.  The assessing of penalties does not constitute making a factual finding but instead is the exercise of a discretionary grant of power, *Cox v. U.S. Dep't of Agric.*, 925 F.2d 1102, 1007 (8th Cir. 1991), that reflects a policy judgment, *Oiciyapi Fed. Credit Union*, 936 F.2d at 1012.  The McClungs do not cite any legal authority, or make any convincing argument, that considering deterrence renders the sanction in this case contrary to law.  If anything, such a consideration is consistent with the discretion to revoke a shoreline use permit when revocation is in the public interest.  Further, even the McClungs attempted to invoke deterrence as a consideration in their November 2012 appeal letter, contending that a fine would be a "more effective deterrence to any future mistakes" (AR 47).

The McClungs also purport to raise a constitutional claim, claiming in a point heading for this argument that a policy of deterrence is "facially unconstitutional in this and other cases" (Dkt. No. 36, at 8).  However, the McClungs never elaborate on this constitutional claim, and the Court declines to consider it.

## C.   Disparate Sanctions And Equal Protection

The McClungs argue that unreasonably harsh sanctions in comparison to other violations renders the Corps's decision arbitrary and capricious.  The Supreme Court addressed a similar

issue in *Butz* and held that "mere unevenness in the application of the sanction does not render its application in a particular case 'unwarranted in law.'" 411 U.S. at 188. "The employment of a sanction within the authority of an administrative agency is thus not rendered invalid in a particular case because it is more severe than sanctions imposed in other cases." *Id.* at 187; *see also Lowry*, 340 F.3d at 507 & n.7 (citing *Butz* and rejecting a similar challenge to the Securities and Exchange Commission's choice of sanctions). Although complete revocation of the McClungs' permit may be relatively severe in comparison to the Corps's sanctions for other past violations, the McClungs "are not entitled to a sanction no more severe than that applied to others." *Cox*, 925 F.2d 1102, 1107 (8th Cir. 1991) (reviewing penalty assessed by Department of Agriculture for violations of the Animal Welfare Act).

The McClungs also raise an equal protection claim based on the alleged disparate treatment arising from the imposition of sanctions. This case involves a federal actor and therefore does not directly implicate the Fourteenth Amendment's Equal Protection Clause. However, the Supreme Court has held that "[t]he liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013) (citing *Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954); *Adarand Constructors, Inc. v. Peña,* 515 U.S. 200, 217-18 (1995)). "Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment." *Buckley v. Valeo*, 424 U.S. 1, 93 (1976) (superseded by statute on other grounds) (citing *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)).

The McClungs do not argue that respondents treated them differently on the basis of any suspect classification, such as race, gender, alienage, or national origin. Rather, the McClungs simply claim that other landowners received lesser sanctions for what the McClungs view as

comparable violations.  Where, as here, an equal protection claim implicates no suspect class or fundamental right, courts review it under a rational basis test.  *Knapp v. Hanson*, 183 F.3d 786, 789 (8th Cir. 1999).  Under the rational basis test, the government action will be upheld so long as the classification "bears a rational relation to some legitimate end."  *Romer v. Evans*, 517 U.S. 620, 631 (1996).  The record demonstrates a rational basis for the Corps's actions.  The operations manager originally recommended partial revocation to allow the area to recover and in part to deter future violations.  Col. Masset's final ruling explains why the Corps found no reason to mitigate the severity of complete revocation.  Accordingly, the McClungs have not established an equal protection violation.

### D.    Evidence, Revocation Procedures, And Due Process

In their petition and in their filings regarding the scope of the record, the McClungs claim that the hearing on revocation was procedurally deficient in that no sworn record was kept, no evidence received, and no witnesses were called.  The Court rejects these arguments.  The McClungs have not presented any legal authority, or made any convincing argument, for the proposition that the Corps was required to swear witnesses, provide a transcript, or take the other measures about which the McClungs complain.  The regulations, in condition 21 of the shoreline use permit conditions, require that the district commander grant a permittee a hearing on a decision to revoke a shoreline use permit, provided the permittee makes the request in writing within a certain timeframe.  *See* 36 C.F.R. § 327.30 app. C.  However, the regulation states no requirements for how the hearing itself is to be conducted.  The Corps apparently does not interpret its regulations to require a formal hearing involving the specific procedures about which the McClungs complain.  That interpretation is controlling unless plainly erroneous or inconsistent with the regulation.  *Auer v. Robbins*, 519 U.S. 452, 461 (1997).

The McClungs further dispute the evidence of the second violation, taking issue with Col. Masset's wording in the April 11, 2013, final order that the McClungs "mowed the remaining and recovering vegetation that had not been killed by the earlier herbicide." (AR 90). The McClungs admit removing the vegetation but dispute that they "mowed" the remaining and recovering vegetation. The McClungs mistakenly believe and erroneously argue that the second violation is unfounded if actual mowing was not involved. Any vegetation modification and removal without prior approval from the district commander is prohibited by 36 C.F.R. § 327.14(a) and condition 18 of the shoreline use permit conditions. Again, the McClungs admit removing vegetation in order to replant the area. The second violation was based on this unauthorized removal and cutting of vegetation, not a specific finding that the McClungs did so by "mowing," notwithstanding Col. Masset's word choice. The record contains documentation of the Corps's determination that the McClungs had cut and removed vegetation as well as color photographs showing vegetation present on the shoreline in October 2012 that is not present in January 2013. The record substantiates the Corps's determination on this issue, and the McClungs are not entitled to a trial *de novo*. Further, the McClungs ignore that the district commander had the authority to revoke the permit for the dock and the steps for the first violation alone. In fact, Col. Masset determined after the first violation to revoke the license for the steps.

The McClungs also argue that the Corps and Col. Masset failed to follow section 6-13 of the SMP regarding permit revocation, which provides in part that "[c]onditions must be carefully and completely documented with copies of certified correspondence to the permittee, dated photographs and detailed inspection reports when recommending permit revocation to the District Engineer." (AR 118). Here, the McClungs repeat their argument that respondents did

not present evidence supporting revocation or provide factual proof in support of Col. Masset's final decision.  The Court rejects this argument.  The record contains Ranger Ivy's investigation report, emails regarding the discovery of the second violation, numerous color photographs documenting both violations, and recommended decision memorandums regarding both violations.  Accordingly, the record demonstrates that respondents complied with section 6-13 by doing what it requires.

Lastly, the McClungs raise a procedural due process claim based on the claimed deficiencies above.  "A procedural due process analysis has two steps:  'first, whether the plaintiffs have a protected interest at stake, and if so, what process is due.'"  *Rochling*, 725 F.3d at 931 (quoting *Bliek v. Palmer*, 102 F.3d 1472, 1475 (8th Cir. 1997)).  Thus, the threshold question is whether the McClungs have identified a constitutionally protected property interest.  To have a constitutionally cognizable property interest in a right or a benefit, a person must have "a legitimate claim of entitlement to it," as opposed to a "unilateral expectation" or an "abstract need or desire for it."  *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972); *see Austell v. Sprenger*, 690 F.3d 929, 935 (8th Cir. 2012).  The Constitution does not create any property interests; due process merely protects property rights arising from and defined by "an independent source such as state law" or other "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Roth*, 408 U.S. at 577; *see Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

The McClungs' claim that respondents' decision depreciated the value of the McClungs' property and deprives them of the access and use of their property.  When making these arguments, the McClungs do not acknowledge that their complaints refer to respondents' decision to deny the McClungs certain private use of *government property*, private use that

previously was permissible by virtue of the McClungs being granted a shoreline use permit.  The McClungs have no property right to a shoreline use permit or its privileges.  The regulations specifically provide that the issuance of a private shoreline use permit "does not convey any real estate or personal property rights or exclusive use rights to the permit holder."  36 C.F.R. § 327.30(d)(5).

The McClungs also cannot demonstrate a legitimate entitlement to acquiring a shoreline use permit.  The McClungs did not obtain a shoreline use permit by virtue of purchasing their property from a previous permit holder; shoreline use permits are non-transferrable and become null and void upon the sale or transfer of the permitted facility.  36 C.F.R. § 327.30.  Further, the regulation authorizing private shoreline use and shoreline use permits, 36 C.F.R. § 327.30, is not mandatory, and the Corps is not required to issue shoreline use permits to the McClungs or any other private individual.  Rather, "[w]hen it comes to authorizing the use of the shoreline by private parties, the Corps is given discretion, and this is shown by the consistent use of the word 'may,' in the applicable regulation."  *Gardner*, 504 F. Supp. 2d at 402 (citing 36 C.F.R. § 327.30(d)(2), (e)(5)(i)).  By way of comparison to the facts in this case, the Ninth Circuit has recognized a property interest in acquiring an individual fishing quota permit from the national fisheries services where the applicable regulations provide that such a permit is subject to sale, transfer, lease, inheritance, and division as marital property and in light of the mandatory language of the regulations establishing the permit system.  *See Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998).  The opposite circumstances are present here.  The permits here are non-transferrable, and the regulations are discretionary, not mandatory, in nature.  *See also Mulkey v. U.S. Dep't of Army*, No. 3:11-CV-123 CDL, 2013 WL 2629460, at *1 (M.D. Ga. June 11, 2013) (holding that the Corps's revocation of shoreline user permit and 5-

year moratorium on any new permits did not deprive plaintiff of any constitutionally protected right).

The Court finds no constitutionally protectable property interest at issue.  Further, even if the McClungs could identify some protectable property interest, their due process claim is based on their arguments of alleged procedural deficiencies and a purported lack of evidence, arguments which the Court rejects for the reasons stated above.  For all of these reasons, the McClungs have not established a procedural due process claim.

*       *       *

The McClungs' objection to the administrative record is overruled, and their request to supplement the record is denied (Dkt. No. 32).  Respondents' motion to strike is granted (Dkt. No. 37).  For the reasons stated above, the Court denies the McClungs' petition for review (Dkt. No. 1).  The relief requested is denied.  Judgment will be entered accordingly.

SO ORDERED this the 25th day of September, 2014.

Kristine G. Baker
United States District Judge